UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VEP BIOTECH LTD,

                 Plaintiff,

v.                                                                                         5:23-CV-1428
                                                                                           (GTS/ML)
QUADRANT BIOSCIENCES, INC.,

                 Defendant.
_____

APPEARANCES:                                                OF COUNSEL:

REED SMITH LLP                                              ANDREW S. WONG, ESQ.
  Counsel for Plaintiff
355 S. Grand Ave., Suite 2900
Los Angeles, CA 90071

599 Lexington Ave., 22nd Floor                              BENJAMIN C. WATSON, ESQ.
New York, NY 10022

BOND SCHOENECK & KING, PLLC                                 LIZA R. MAGLEY, ESQ.
  Counsel for Defendant                                       BRIAN J. BUTLER, ESQ.
One Lincoln Center
Syracuse, NY 13202

HUSCH BLACKWELL LLP                                         BRANDON S. STEIN, ESQ.
  Co-counsel for Defendant
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016

111 Congress Ave., Suite 1400                               TIMOTHY P. RIBELIN, ESQ.
Austin, TX 78701

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

      Currently before the Court, in this breach of contract action filed by VEP Biotech LTD ("Plaintiff" or "VEP") against Quadrant Biosciences, Inc. ("Defendant"), is Plaintiff's motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkt. No. 32.) For the reasons set forth below, Plaintiff's motion is denied.

I. **RELEVANT BACKGROUND**

    A. **Plaintiff's Complaint and Defendant's Counterclaim**

Generally, in its Complaint, Plaintiff asserts a claim for breach of contract premised on allegations that Defendant failed to comply with its obligations under a Convertible Note ("Note") executed by the parties as part of a broader Note Purchase Agreement ("Agreement"). (Dkt. No. 1, at ¶¶ 1-6.) More specifically, Plaintiff alleges that Defendant failed to provide the required payment of the Note's principal amount of $5,000,000, plus interest, to Plaintiff at any time before or after the maturity date of the Note, despite the fact that Plaintiff provided adequate notice to Defendant that it was in breach of its obligations under the Note. (*Id.*)

In its Answer to Plaintiff's Complaint, Defendant asserts a counterclaim for breach of contract against Plaintiff based on allegations that Plaintiff breached its obligation to purchase the second and third Convertible Notes as set forth in the terms of the Agreement. (Dkt. No. 15, at 7-17.) It further asserts that this prior material breach acts as an affirmative defense to Plaintiff's breach-of-contract claim. (*Id.* at 7.)

    B. **Parties' Briefing on Plaintiff's Motion for Judgment on the Pleadings**

        1. **Plaintiff's Memorandum of Law**

Generally, in its motion for judgment on the pleadings, Plaintiff makes three arguments. (Dkt. No. 23, Attach. 1.) First, Plaintiff argues that it has established as a matter of law a prima facie case of default on the relevant Note because it has alleged that (a) the Note was validly created, and (b) Defendant failed to pay any amount on that Note from the date of issuance

2

through the date of maturity, or at any time after the date of maturity after VEP made a demand for immediate payment in accordance with the terms of the Note. (*Id.* at 6-8.)

Second, Plaintiff argues that Defendant's Answer to the Complaint fails to raise any issue of fact or law that would preclude entry of judgment on the pleadings as to Plaintiff's claim because Defendant's answer either admits or fails to validly deny (a) the relevant allegations in Plaintiff's Complaint regarding the material terms of the Note, (b) Defendant's failure to make payment as required under the terms of the Note, (c) the fact that Plaintiff made a demand for payment after the date of maturity according to the terms of the Note, and (d) other relevant facts. (*Id.* at 8-9.)

Third, Plaintiff argues that Defendant's affirmative defenses and counterclaim do not present a basis for denying the motion for judgment on the pleadings as to Plaintiff's claim for breach of contract, because such defenses and counterclaim are immaterial given that nothing in the Agreement permits Defendant to withhold repayment on any of the Notes purchased thereunder in the event of a breach of the Agreement. (*Id.* at 10-13.)  Specifically, Plaintiff argues that Defendant had an absolute and unconditional obligation to pay under the Note that in no way depends on whether Plaintiff met its obligation to purchase other, additional Notes under the Agreement. (*Id.*)

### 2. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant makes three arguments. (Dkt. No. 25.)  First, Defendant argues that, contrary to Plaintiff's assertion, it has not conceded the issue of liability on Plaintiff's claim, but rather affirmatively stated in its responses that, although it did not make any payments on the Note, such action was because Plaintiff had committed a

prior material breach of the Agreement and therefore Defendant was excused from future performance. (*Id.* at 8-9.)

Second, Defendant argues that its affirmative defense of Plaintiff's prior material breach of the Agreement precludes judgment on the pleadings. (*Id.* at 9-17.) More specifically, Defendant argues that (a) New York law presumes that instruments entered into at the same time and for the same purpose (such as the Agreement and relevant Note) should be construed together and thus a breach of one agreement impacts the other, especially because here the Note explicitly incorporates the terms of the Agreement, and (b) at the very least, the issue of whether the Agreement and the Note are one agreement is a factual issue reliant on an assessment of the intent of the parties that cannot be resolved on a motion pursuant to Fed. R. Civ. P. 12(c). (*Id.*)

Third, Defendant argues that granting judgment on the pleadings at this stage is also not warranted because, regardless of whether Plaintiff's claim is resolved, proceedings will continue related to Defendant's counterclaim, and thus resolution of that claim would not change the trajectory or narrow the scope of this litigation, such that the more appropriate course of action would be to allow all of these issues to proceed together into discovery. (*Id.* at 17-18.)

### 3.  Plaintiff's Reply Memorandum of Law

Generally, in reply to Defendant's opposition, Plaintiff makes three arguments. (Dkt. No. 26.) First, Plaintiff argues that judgment on the pleadings is warranted on its claim because, contrary to Defendant's argument, there is no material dispute of fact that must be resolved to reach such an outcome given that Defendant's Answer does not sufficiently deny that all the requirements of that claim are met as a matter of law based on the allegations in Plaintiff's Complaint. (*Id.* at 5-6.)

Second, Plaintiff argues that Defendant's assertion that Plaintiff engaged in a prior material breach of the Agreement does not preclude judgment on the pleadings, because the fact that the Agreement and the Note must be read together (a fact that Plaintiff does not dispute) does not mean that Defendant was not subject to an unconditional obligation to make payment on the Note. (*Id.* at 6-9.)   More specifically, Plaintiff argues that nothing in the unambiguous terms of the Agreement even suggests that Defendant's obligations under the executed Note are in any way contingent on Plaintiff's performance of the remainder of the Agreement. (*Id.*)   It further argues that New York law supports an entry of judgment on the pleadings. (*Id.* at 9-12.)

Third, Plaintiff argues that Defendant's argument that its counterclaim would survive any motion for judgment on the pleadings does not stand as a basis for denying Plaintiff's motion, because "there is no efficiency to be gained by maintaining a live controversy that can be summarily resolved on the undisputed facts and contract terms," and "[t]he future scope and direction of this case are irrelevant and immaterial to the appropriateness of granting [Plaintiff's] [m]otion." (*Id.* at 13.)

II.     GOVERNING LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of

5

contract cases involving legal interpretations of the obligations of the parties" because "initial interpretation of a contract is a question of law for a court." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).

A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 [2d Cir. 2009]). The Court therefore must accept as true all of the non-movant's well pleaded factual allegations and draw all reasonable inferences in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). "When a plaintiff moves for judgment on the pleadings, the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Allstate Ins. Co.*, 537 F. Supp. 3d at 545 (internal quotation marks omitted).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 [2d Cir. 2009]). The Court may also review any document incorporated by reference into one of the pleadings and any document that is not incorporated by reference but on which the complaint relies and which is integral to it. *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

**III.   ANALYSIS**

After careful consideration, the Court denies Plaintiff's motion for judgment on the pleadings for the reasons stated in Defendant's opposition memorandum of law. *See, supra* Part I.B.2 of this Decision and Order. To those reasons, the Court adds the following analysis.

Here, Plaintiff's sole claim alleges breach of contract, with the Note as the relevant contractual agreement. "To prevail on a claim for breach of contract under New York law, a plaintiff must show '(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages.'" *Wiener v. AXA Equitable Life Ins. Co.*, – F.4th –, 2024 WL 3881838, at *8 (2d Cir. 2024) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 [2d Cir. 2011]).

Granted, contrary to Defendant's objections, there is nothing in the Answer's responses to the Complaint's factual allegations that plausibly suggests that Plaintiff has not shown that all of the above elements have been met as a matter of law as to the circumstances related to the Note. Specifically, Defendant does not deny that it agreed to the terms contained within the Note (a copy of which is appended to the Complaint and contains the electronic signature of Richard Uhlig, Chief Executive Officer of Defendant), but instead merely answers that the Note speaks for itself. (Dkt. No. 15.) Indeed, nothing in Defendant's opposition memorandum of law suggests that it is contesting that the parties entered an agreement that was memorialized by the Note. (Dkt. No. 25.) The first element here is therefore met.

Similarly, there appears to be no argument by Defendant that Plaintiff provided adequate performance of its obligations under the Note specifically; it admits that "VEP funded the first Note for $5,000,000.00 on November 12, 2018." (Dkt. No. 25, at 7.) A review of the Note itself does not reveal any other relevant actions Plaintiff was required to take in terms of performance

7

of its obligations for that specific Note.  (Dkt. No. 1, Attach. 1.)  Thus, the second element is nominally met.[1]

Further, regarding breach, Defendant admits in its Answer that "it did not make any payments under the First Note to VEP from the Date of Issuance through the Maturity Date or thereafter."  (Dkt. No. 15, at ¶ 16.)  The terms of the Note indicate that Defendant promised to pay to Plaintiff "the principal sum of the Purchase Price, together with accrued but unpaid interest thereon, if any, on the Maturity Date, to the extent such principal amount and interest has not been repaid or converted in accordance with the terms hereof," and one of the explicitly listed events of default occurs where Defendant "fails to pay as and when due any principal or interest under the Convertible Note or shall fail to pay any other amount due under any convertible note issued under the Purchase Agreement within five (5) days of when due."  (Dkt. No. 1, Attach. 1, at 1, 5.)  As a result, there appears to be no question (before considering Defendant's affirmative defense) that Defendant breached the agreement contained in the Note.

Lastly, under the circumstances, there can be no doubt that Plaintiff suffered damages as a result of the breach due to the Defendant's undisputed failure to pay at least the principal amount of the Note.  As a result, the Court finds that the pleadings sufficiently show that Plaintiff has met all of the elements to sustain its claim for breach of contract.

However, that finding does not end the inquiry here because Defendant has asserted as an affirmative defense that Plaintiff committed a prior material breach of the Agreement that

---

[1]  Defendant denies the allegation in the Complaint that "VEP adequately performed all of its duties under the Note," but that denial simply cannot be sustained based on the other information in the pleadings, including the Note itself.  (Dkt. No. 15, at 6.)

8

precludes a finding of liability on Plaintiff's claim for breach of contract.[2]  Specifically, Defendant alleges in its Answer that Plaintiff is not entitled to enforce the Note against it, because Plaintiff committed a prior material breach of the Agreement by failing to purchase the second and third Convertible Notes under the terms of that Agreement.  (Dkt. No. 15, at 7.)

It is undisputed that the Agreement and the Note are contained in separate documents. The first question the Court must therefore assess is whether those two documents should be read together as constituting a single agreement.

Under New York law, "'whether multiple writings should be construed as one agreement depends on the intent of the parties,'" which is typically a question of fact for a jury; but "if the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court."  *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (quoting *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 .2d 49, 52-53 [2d Cir. 1993]; citing *Rudman v. Cowles Commc'ns, Inc*., 30 N.Y.2d 1, 13 [N.Y. 1972], *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc*., 232 F.3d 153, 157-58 [2d Cir. 2000]); *see also BWA Corp. v. Alltrans Express U.S.A*., 112 A.D.2d 850, 852 (N.Y. App. Div. 1st Dep't 1985) (citing *Nau v. Vulcan Rail & Constr. Co*., 286 N.Y. 188 [N.Y. 1941]) ("*In the absence of anything to indicate a contrary intention*, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eyes of the law, one instrument.") (emphasis added).

---

[2]  Defendant also asserts a counterclaim related to this alleged prior material breach, as was discussed above in Part I.A of this Decision and Order.  (Dkt. No. 15, at 16.)

It is undisputed that the Agreement and the Note were both executed on the same date: November 12, 2018. The Agreement provides that Defendant will issue and sell (and Plaintiff will purchase) three Convertible Notes on or before specified dates provided certain enumerated conditions are met. (Dkt. No. 15, Attach. 1.) Section 7.2 of the Agreement states that "[t]he Transaction Documents embody the entire agreement and understanding between the Purchaser and the Company and supersede all prior agreements and understandings relating to the subject matter." (*Id.* at 9.) Section 7.3 of the Agreement provides that "[e]ach of the Transaction Documents may be amended, and the observance of any term hereof and thereof may be waived with the written consent of the Company and the Purchaser." (*Id.*) The Agreement defines the term "Transaction Documents" as "collectively, this Agreement and the Convertible Notes." (*Id.* at 11.) Relevantly, the Note itself contains the following language:

> This Convertible Note is one of the Convertible Promissory Notes (each a "Convertible Note" and collectively the "Convertible Notes") issued pursuant to and in accordance with the terms and conditions of the Note Purchase Agreement, dated as of November 12, 2018 between the Company and the Investor thereto, as may be amended from time to time (the "Purchase Agreement"), *and is subject to the terms and conditions of the Purchase Agreement, which are, by this reference, incorporated herein and made a part hereof.* In the event of a conflict between the terms of the Purchase Agreement and this Convertible Note, the terms of the Purchase Agreement shall control.

(Dkt. No. 1, Attach. 1, at 1 [emphasis added].) Further, consistent with the Agreement, the Note states, in relevant part, that "[t]his Convertible Note and the Purchase Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof." (Dkt. No. 1, Attach. 1, at 7.)

10

Read collectively, these provisions in the Agreement and the Note plausibly suggest that those documents constitute one agreement that must be read and interpreted together. Indeed, in its reply, Plaintiff admits as much. (Dkt. No. 26, at 7 ["VEP has never argued that the Note and Note Purchase Agreement should be read separately, nor does VEP argue that now. On the contrary, both parties agree that the Note and the Note Purchase Agreement are read together."].) Plaintiff argues that, notwithstanding the fact that the Agreement and the Note constitute one agreement that must be read together, breach of the Agreement does not excuse Defendant from performance under the Note, because the Note unambiguously imposes an unconditional obligation that is not affected by any non-performance of the Agreement. (*Id.* at 7-8.)

Under New York law, whether breach of one agreement negates another agreement is based on whether those agreements are "mutually dependent" or "intertwined." Agreements are "intertwined" for this purpose if "the negotiable instrument supplied the consideration for the breach, such that the breach of contract would, if proven, negate the obligation to honor the instrument." *Foster Family LP v. Adelphi Luxury Apartments LLC*, 10-CV-2844, 2012 WL 760421, at *2 (E.D.N.Y. Mar. 7, 2012) (stating also that "[a] contract secured by issuance of a promissory note is 'not merely related' to the note; it is 'the reason for the [note's] execution.'") (quoting *A. David Schwartz, M.D., P.C. Pension Trust v. Mastercraft Indus., Inc.*, 114 A.D.2d 946 [N.Y. App. Div. 2d Dep't 1985]). The Second Circuit has recognized that the inquiry into whether two documents are "mutually dependent" involves an assessment of whether "'the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken.'" *TVT Records*, 412 F.3d at 90 (quoting *Commander Oil Corp.*, 991 F.2d at 53); *see also In re Progressive Restaurant Sys., Inc.*,

11

96-CV-0768, 1997 WL 251508, at *3 (W.D.N.Y. May 8, 1997) ("In determining whether the parties intended that a number of separate agreements constitute a single indivisible contract, it is useful to inquire 'whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'") (quoting *U.S. v. Bethlehem Steel Corp.*, 315 U.S. 289, 298 [1942]).

"Whether two agreements are inextricably intertwined is a question of law for the court to decide because it involves a matter of contract interpretation." *Saulsbury v. Durfee*, 201 A.D.3d 1318, 1320 (N.Y. App. Div. 4th Dep't 2022) (citing *Mallad Constr. Corp. v. Cnty. Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 291 [N.Y. 1973]; *Matter of Erie Cnty. Dep't of Soc. Servs. v. Bower*, 177 A.D.3d 1387, 1388 [N.Y. App. Div. 4th Dep't 2019]); *cf. JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 127 (2d Cir. 2022) (noting that "[w]hether the parties intended to treat both agreements as mutually dependent contracts, the breach of one undoing the obligations under the other, is a question of fact," and that, "[i]n determining whether contracts are separable or entire, the primary standard is the intent manifested, viewed in the surrounding circumstances," but that a court is permitted to make a finding on the issue where the agreements are unambiguous); *Gallagher's NYC Steakhouse Franchising, Inc. v. N.Y. Steakhouse of Tampa, Inc.*, 11-CV-1456, 2011 WL 6034481, at *4 (S.D.N.Y. Dec. 5, 2011) (quoting *Rudman*, 30 N.Y.2d at 13; *Refinement Int'l Co. v. Eastbourne N.V.*, 815 F. Supp. 738, 742 [S.D.N.Y. 1993]) ("Whether provisions within a contract are dependent is largely a question of intent and circumstances," and "[t]he intent of the parties should be 'determined from the language of the contract and the circumstances under which the contract was made.'").

In *Saulsbury*, the New York Appellate Division Fourth Department outlined multiple factors that guided its assessment when finding that a sales contract (which was part of an single agreement with a related promissory note) and an employment agreement were not intertwined: (a) the agreements did not incorporate or reference each other; (b) the agreements were executed at different times and for different purposes and cannot be said to be a single, integrated agreement; (c) the sales contract did not mention any condition related to the employment of the defendant or even contemplate employment; (d) the plain terms of the promissory note showed that it was an unambiguous instrument containing an unconditional promise to pay without any reference to the employment agreement, and (e) the sales agreement and the employment agreement each contained its own merger clause providing that the contract constituted its own entire agreement.  *Saulsbury*, 201 A.D.3d at 1321; *see also Fitzpatrick v. Animal Care Hosp., PLLC*, 104 A.D.3d 1078, 1080-81 (N.Y. App. Div. 3rd Dep't 2013) (finding asset purchase agreement and promissory note were intertwined where [a] they were executed contemporaneous with one another, [b] the promissory note represented "partial consideration" for assets purchased, [c] the asset purchase agreement specifically referred to the promissory note and attached a copy, and [d] the promissory note did not contain any waiver of the right to an offset for counterclaims).

Here, a finding of inextricability or mutual dependence is supported by the following facts based on the undisputed allegations and the plain, unambiguous language of the instruments: (a) the Agreement and the Note both reference the other, and the Note explicitly incorporates the terms of the Agreement; (b) they were both executed on the same day as part of the same transaction and the parties agree that they represent a single agreement; and (c) the

13

Agreement contains a merger clause which indicates by its plain language that both the Agreement and the Note (along with the other Convertible Notes contemplated by the Agreement, but not executed at the time of signing) constitute the entire agreement between the parties. Indeed, there is no need to resort to a factual assessment of the parties' intent regarding whether the Agreement and the Note (along with the unissued Convertible Notes, had they been issued) must be considered to be a cohesive agreement because, as was discussed above, the unambiguous language in the Agreement at Section 7.2 expressly states that all of those documents together represent the entire agreement between the parties.

Moreover, although Plaintiff is correct that the Note does not contain any specific language regarding the terms of the Note being conditioned upon compliance with the terms of the Agreement (namely, the terms requiring the purchase of the second and third Convertible Notes), the Note does explicitly state that it is "subject to the terms and conditions of the Purchase Agreement." Because the terms and conditions of the Agreement include the purchase by Plaintiff of the second and third Convertible Notes according to the schedule outlined therein, the Court cannot say that the Note is an unconditional promise to pay regardless of non-compliance with the Agreement itself; at the very least, there is an ambiguity as to the scope of the term "subject to" in the Note which would preclude the entry of judgment on the pleadings. *See In re RMM Records & Video Corp.*, 372 B.R. 603, 606, 611 (Bankr. S.D.N.Y. 2007) (finding Asset Purchase Agreement and promissory note were intertwined such that breach of the former could act as an affirmative defense for breach of the latter where, in relevant part, the note expressly stated that it was subject to all the terms and conditions of the asset purchase agreement); *cf. Margarella v. Ullian*, 164 A.D.3d 898, 899-900 (N.Y. App. Div. 2d Dep't 2018)

14

(highlighting that the terms of the promissory note in that case explicitly stated that "the maker's obligations were 'absolute and unconditional' and that the promissory note was 'valid and enforceable irrespective of any other agreement or circumstances'"); *Embraer Fin. Ltd. v. Servicios Aereos Profesionales, S.A.*, 42 A.D.3d 380, 381 (N.Y. App. Div. 1st Dep't 2007) (finding sale agreement and promissory note were not inextricably intertwined because [a] the plain language of the promissory note established an absolute, unconditional obligation to pay according to the terms of the note, and [b] the note incorporated by reference the terms and conditions of the sale agreement "only to the extent necessary for the enforcement of the note").

The Court further finds that, despite the fact that the Note was issued separately from the contemplated second and third Convertible Notes, all three Convertible Notes in the aggregate represent the consideration for the Agreement. One of the first clauses of the Agreement states that "[Defendant] desires to sell and [Plaintiff] desires to purchase Convertible Notes with an aggregate principal amount up to US$10,000,000 in one or more closings and on such terms and conditions provided herein." (Dkt. No. 15, Attach. 1, at 2.) The Agreement then outlines the structure of that agreement, which includes the issuance and sale to Plaintiff of three convertible notes: a first for $5,000,000; a second for $2,500,000; and a third for $2,500,000. (*Id.*) There are certain enumerated conditions under which Plaintiff would be relieved of its obligation to purchase the relevant convertible notes, but there is no clause that permits Plaintiff to refuse to purchase the second or third Convertible Notes unless such conditions are met. (*Id.* at 2-3.) By contrast, the Agreement explicitly does allow Defendant to elect to refrain from issuing the second or third Convertible Note provided they afford Plaintiff proper written notice of that election. (*Id.* at 3.) The terms of the Agreement therefore indicate that Defendant entered into

15

the Agreement with the expectation that, barring the occurrence of circumstances outlined in the Agreement, three Convertible Notes would be purchased by Plaintiff.

This leads to a final question, namely whether the Note "supplied the consideration for the breach, such that a breach of the contract would, if proven, negate the obligation to honor the instrument," or, stated another way, whether "'the parties assented to all the promises as a whole, so that there would have been no bargain whatever if any promise or set of promises had been stricken.'" *Foster Family LP*, 2012 WL 760421, at *2; *TVT Records*, 412 F.3d at 90.  Here, although the Note provides partial consideration to satisfy the Agreement, it is also undisputed that the amount encompassed by the Note is only half of the total amount contemplated in the Agreement.  Plaintiff's argument rests on the premise that, because the Note was fully executed (i.e., Plaintiff paid the moneys specified in that Note to Defendant and therefore provided the consideration for it), it does not constitute any part of the consideration of the Agreement to the extent that Agreement was allegedly breached by Plaintiff's failure to purchase the second and third Convertible Notes.  However, for the reasons discussed above, specifically the language in the Note that the Note is "subject to" the terms and conditions of the Agreement, the obligation to purchase those two additional Convertible Notes is not a matter that is "extrinsic" to the Note – it in fact appears to be incorporated into the Note by an explicit reference.  Despite the fact that the Agreement structured the bargain here into three separate Convertible Notes, the relevant language in the Agreement and the Note is not so unambiguous as to allow an entry of judgment on the pleadings, but instead requires a more detailed analysis of the parties' intent than is achievable on the pleadings and appended evidence.

For all of these reasons, Defendant's affirmative defense prevents an entry of judgment on the pleadings. Plaintiff's motion is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 23) is **<u>DENIED</u>**.

Dated: September 19, 2024
       Syracuse, New York

*[signature]*
Glenn T. Suddaby
U.S. District Judge